IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

```
                          )
KIMBERLY HOLLANDSWORTH,    )
                          )
        Plaintiff,         )
                          )
     v.                    )    Civ. No. 19-00587 ACK-WRP
                          )
CITY AND COUNTY OF HONOLULU; )
LIANNE WOLFRAM; JOSEPH C.K. )
LUM; JOHN AND/OR JANE DOES  )
1-10,                      )
                          )
        Defendants.       )
                          )
```

## ORDER GRANTING IN PART AND DENYING IN PART THE CITY'S MOTION TO DISMISS

For the reasons discussed below, the Court GRANTS IN
PART AND DENIES IN PART Defendant the City and County of
Honolulu's motion to dismiss Plaintiff's Complaint as against
the City for failure to state a claim, ECF No. 11.  The Court
DISMISSES all claims asserted against the City; DISMISSES counts
one, two, and five against Defendant Officers Wolfram and Lum in
their official capacities; and DISMISSES all claims against the
Doe Defendants.  The fourth cause of action against Defendant
Officers Wolfram and Lum in their official capacities—which is,
in effect, a claim against the City—remains.  The motion does
not address claims against Defendant Officers Wolfram and Lum in
their individual capacities, and those claims also remain.

- 1 -

## FACTUAL BACKGROUND

This case relates to a dispute over the ownership of a horse named "Jasper." ECF No. 1 ("Compl."), ¶ 11. Plaintiff Kimberly Hollandsworth ("Plaintiff") alleges that Defendant Lianne Wolfram ("Defendant Wolfram"), a Honolulu Police Department ("HPD") officer, gave the horse to Plaintiff. Compl. ¶ 12, 15. Defendant Wolfram then changed her mind about giving the horse to Plaintiff and sought to take the horse back. Compl. ¶ 14.

Plaintiff alleges that Defendant Wolfram notified her HPD supervisors at District 8 of her intent to retrieve the horse and she was instructed to contact District 4 and request standby assistance. Compl. ¶ 16. Defendant Wolfram directly contacted HPD Officer Lum ("Defendant Lum") at District 4, who agreed to assist. Compl. ¶ 18. Defendant Wolfram later contacted the District 4 station to request standby assistance. Compl. ¶ 19. That request was relayed to Defendant Lum and one other HPD officer, both of whom met Defendant Wolfram at the stables. Compl. ¶¶ 20-22.

Shortly thereafter, Plaintiff arrived at the stables. Compl. ¶ 24. Plaintiff and Defendant Wolfram argued over the ownership of the horse until Defendant Lum intervened in the argument. Compl. ¶¶ 24-26. Defendant Lum asserted that he was in charge and asked Plaintiff to fill out an HPD Form to explain

her claim of ownership. Compl. ¶ 26. Defendant Lum determined that Defendant Wolfram owned the horse, and Defendant Lum "displayed his authority" to permit Defendant Wolfram to take the horse, which Plaintiff argues was an improper seizure of her property. Compl. ¶¶ 27, 42.

Plaintiff alleges that Defendant Officers Wolfram and Lum (together, the "Officer Defendants") violated HPD Policy Numbers 2.21 and 4.08. See Compl. ¶¶ 32-38. Plaintiff further alleges that the Officer Defendants were not adequately trained, supervised, or disciplined, Compl. ¶¶ 39-40, and that the HPD has a de facto policy, practice, or custom of tolerating and failing to address instances of HPD officers conferring favorable treatment on fellow officers, Compl. ¶ 43.

As evidence of the de facto policy, Plaintiff cites conduct relating to three other non-defendant HPD officers. Plaintiff alleges that Officer Cachola was involved in three instances of domestic violence; Officer Kimura was involved in a reckless shooting at a bar; and Officer Lombardi is involved in a custody and support dispute. Compl. ¶¶ 44-51. According to Plaintiff, in each of these instances fellow officers conferred favorable treatment by, for example, failing to conduct contemporaneous investigations, harassing victim complainants, or filing false reports. See Compl. ¶¶ 44-51. Further, Plaintiff asserts that HPD's latest Legislative Disciplinary

Report for Reporting Year 2018 contains seven instances where HPD failed to properly investigate and document vehicle collisions and drunk driving incidents involving fellow officers.  Compl. ¶ 52.

Based on this, Plaintiff asserts (1) a Fourth Amendment violation under § 1983 against the Officer Defendants and Doe Defendants; (2) a Fourteenth Amendment violation under § 1983 against the Officer Defendants and Doe Defendants; (3) municipal liability under § 1983 against the City and County of Honolulu (the "City"); (4) intentional infliction of emotional distress against the Officer Defendants; (5) negligence against the Officer Defendants; (6) negligent training, supervision, and/or discipline against the City; and (7) vicarious liability against the City for the Officer Defendants' negligence.  Compl. ¶¶ 54-77.

On December 18, 2019, Defendant the City filed a Rule 12(b)(6) motion to dismiss Plaintiff's Complaint as against the City.  ECF No. 11.  On January 29, 2020, Plaintiff filed her Opposition, and on February 5, 2020, the City filed its Reply. The Court held a hearing on the motion on February 19, 2020.

## STANDARD

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

The Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 784 (9th Cir. 2012) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Id. (quoting Iqbal, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. (citing Twombly, 550 U.S. at 555). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

When the Court dismisses a complaint pursuant to Rule 12(b)(6) it should grant leave to amend unless the pleading cannot be cured by new factual allegations. OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

## DISCUSSION

The City moves to dismiss all three claims Plaintiff asserted against it: (1) municipal liability based on the Fourth and Fourteenth Amendment violations alleged against the Officer Defendants; (2) negligent training, supervision, and/or discipline; and (3) vicarious liability for negligence by City employees. The City further argues that Plaintiff's official-capacity claims should be dismissed as duplicative, and that the

Doe Defendants should be dismissed as improper parties.  The
Court addresses each in turn.

## I.    Municipality Liability Under § 1983

### a. Requirements for a Municipal Liability Claim

Section 1983 provides:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage . . .
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured . . . .

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff
must allege the violation of a right secured by the Constitution
and laws of the United States, and must show that the alleged
deprivation was committed by a person acting under color of
state law."  West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250,
2254–55, 101 L. Ed. 2d 40 (1988).

A municipality is a "person" for purposes of § 1983
but it is "only when execution of a government's policy or
custom inflicts the injury that the municipality as an entity is
responsible."  Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185
(9th Cir. 2006).  "To impose liability on a local governmental
entity for failing to act to preserve constitutional rights,
a section 1983 plaintiff must establish: (1) that he possessed a
constitutional right of which he was deprived; (2) that the

municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91, 109 S. Ct. 1197, 1205-06, 103 L. Ed. 2d 412 (1989)).  This is referred to as a Monell claim for the Supreme Court case in which it was established.  See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978).

Plaintiff here alleges that the HPD has a policy "to tolerate and ratify conferring favorable treatment by police officers on fellow officers," and that HPD's "failure to adopt, implement, and enforce rules, procedures, regulations, policies, and/or practices to prevent this type of misconduct" caused her injuries.  Compl. ¶¶ 63, 65.  The City makes three arguments for why Plaintiff fails to state a claim under § 1983: (1) Defendant Wolfram did not act under the color of law, and the municipal liability claims based on that conduct should therefore be dismissed; (2) Plaintiff failed to allege facts to establish a violation of the Fourteenth Amendment, and the municipal liability claims based thereon should be dismissed; and (3) Plaintiff does not adequately plead the remaining elements of a § 1983 municipal liability claim.

### b. Color of Law

The City first argues that Defendant Wolfram was not acting under color of law. Mot. at 4-5. "There is no 'rigid formula' for determining whether a state or local law official is acting under color of state law." Anderson v. Warner, 451 F.3d 1063, 1068 (9th Cir. 2006) (citing Ouzts v. Md. Nat'l Ins. Co., 505 F.2d 547, 550 (9th Cir. 1974). The inquiry "turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." Id. 451 F.3d 1063, 1068 (9th Cir. 2006) (quoting Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)). The parties here agree as to the three relevant requirements:

> First, the defendant's action must have been performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties.
>
> Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others.
>
> Third, the challenged conduct must be related in some meaningful way either to the officer's governmental status or to the performance of his duties.

Id. at 1068-69 (internal citations and quotations omitted); see also Mot. at 4 and Opp. at 7-8 (citing same).

Plaintiff argues that Defendant Wolfram was acting under color of law for two reasons. First, Plaintiff argues

that Defendant Wolfram used her position as a police officer to obtain standby assistance and obtain favorable treatment in the performance of that standby assistance. Opp. at 11, 13-14. Second, Plaintiff argues that even if Defendant Wolfram was acting as a private person, she had a sufficient degree of joint cooperation with Defendant Lum to convert her private actions into actions taken under color of law. Opp. at 12-13.

### i. Position as a Police Officer

Plaintiff has not provided allegations supporting her contention that Defendant Wolfram was acting under color of law by relying on her position as a police officer to obtain favorable treatment.

Plaintiff argues in her Opposition that the standby assistance was provided as "a favor" to Defendant Wolfram, and that "[f]ew, if any, officers would risk such behavior on behalf of a regular citizen, but would on behalf of a fellow officer." Opp. at 11, 14. These are conclusory statements, and Plaintiff's Complaint specifically alleges a policy permitting police officers to provide standby assistance as necessary to prevent a breach of the peace or a violation of the law. Compl. ¶ 37. Aside from the conclusory statements, Plaintiff has made no allegations that "regular citizen[s]" are denied standby assistance when requested.

Plaintiff further argues that Defendant Wolfram's position as a police officer gave her "direct access" to Defendant Lum and enabled Defendant Wolfram to plead her case in advance.  Opp. at 12; Compl. ¶¶ 17-18.  Accepting these allegations as true, it does not follow that Defendant Lum provided standby assistance as a favor.  Plaintiff alleges that Defendant Wolfram's supervisors instructed her to request standby assistance from District 4, and that Defendant Lum did not proceed to the stables until he received instruction from the police station.  Compl. ¶¶ 16, 19-20.

Nor does Plaintiff explain how Defendant Wolfram's decidedly personal request was made while Defendant Wolfram was "acting, purporting, or pretending to act in the performance of . . . her official duties."  <u>Anderson</u>, 451 F.3d at 1068-69. Plaintiff does argue that "[b]ut for her position as a police officer, Defendant WOLFRAM would not have been able to prevail upon Defendant LUM to accomplish any of this."  Opp. at 12.  But it is not clear from the Complaint that Defendant Wolfram only received assistance from Defendant Lum because of her position as a police officer, and her employment as a police officer does not transform her personal request for standby assistance during the retrieval of a horse into a request asserted under the guise

of official duty.[1/]  "Merely because a police officer is
recognized as an individual employed as a police officer does
not alone transform private acts into acts under color of state
law." Van Ort v. Estate of Stanewich, 92 F.3d 831, 839 (9th
Cir. 1996) (finding an assault and attempted robbery by a
recognized police officer was not performed under color of law,
explaining that "[a]t no point did [the officer] purport to be
acting as a policeman.  On the contrary, he did not show a
badge, but forced himself in wearing a nylon mask and pointing a
gun . . .").

    Plaintiff cites to McDade v. West, 223 F.3d 1135 (9th
Cir. 2000), in which the court found that a state employee acted
under color of law when she illegally used the district
attorney's database to locate her husband's ex-wife in order to
serve child custody papers.  But in that case, the court relied
on the fact that the employee's computer access privileges were
part of her official duties and, "[w]hile acting under the
pretense of performing her official duties, she accessed the
database during normal working hours, using computer equipment
and a password supplied by the County," thereby relying on her
powers of office to complete the act.  Id. at 1140.  Plaintiff
makes no such allegations that Defendant Wolfram's request to

---

[1/] Plaintiff does not allege whether a private citizen is able to
contact a police officer directly, or whether Defendants Wolfram and Lum had
a personal relationship prior to the contact at issue.

Defendant Lum was made under the pretense of her official duties as a police officer.

Plaintiff's citation to Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476 (9th Cir. 1991) fares no better. The court there found a reasonable assertion that a state employee was acting under color of law. The employee's role was interviewing and finding refugees suitable employment. Id. at 478. During meetings purportedly arranged for the provision of those government services, the state employee raped two refugee women. Id. at 480. Plaintiff argues that, like in Dang Vang, Defendant Wolfram "used her status as a police officer to obtain or exact a favor from Defendant LUM" and "[t]hat Defendant WOLFRAM was seeking to repossess a horse is no different than . . . [a government employee] raping clients he was supposed to be assisting." Opp. at 12. The Court disagrees.

The arranged meetings for the supposed provision of governmental services in Dang Vang are starkly different from a personal confrontation over private property. Plaintiff does not allege that Defendant Wolfram invoked her police authority during that confrontation by, for example, telling Plaintiff she must do as Defendant Wolfram directed because Defendant Wolfram was a police officer, displaying her badge, or wearing her police uniform to the encounter. Plaintiff does allege that

Defendant Wolfram brought her husband to the encounter, suggesting a personal nature to the confrontation.  Compl. ¶ 25.

In Gritchen v. Collier, 254 F.3d 807 (9th Cir. 2001), the court held that a police officer did not act under color of law when he threatened a defamation lawsuit against a motorist who had complained about the officer's conduct during a traffic stop.  Id. at 813-14.  In so holding, the court explained that the threatening or bringing of a lawsuit was unrelated to the officer's duties as a police officer even though the subject of the suit related to conduct performed while on duty.  Id. at 813.  The court noted that the police department had "nothing to do" with the lawsuit, that litigation does not abuse a police officer's authority, and that defamation is a "quintessentially personal" action that would only result in private recovery. Id.

Unlike in Gritchen, Defendant Wolfram's request for standby assistance did involve the police department.  But the Court refuses to conclude that a police officer loses the right to request police assistance as a private citizen.  Not every request for police assistance is transformed into state action just because a police officer makes the request.  Like in Gritchen, this is the type of "private squabble[] that we, and other circuits, have consistently refused to attribute to the state."  Id.; see also Dilts v. Blair, No. CV04-508-C-EJL, 2005

WL 2847415, at *3 (D. Idaho Oct. 19, 2005) (police officer not acting under color of law when responding to a personal call from his ex-wife at their mutual residence because the conduct "was in no way related to the performance of his duties as a police officer").

Plaintiff does provide allegations showing that she was deprived of a horse under the color of law when Defendant Lum intervened in the dispute to announce he was "in charge," questioned Plaintiff's claim of ownership, directed Plaintiff to fill out an HPD form, and "displayed his authority" to permit Defendant Wolfram to take the horse. All of these actions were taken by Defendant Lum, not Defendant Wolfram. That Defendant Wolfram called a police officer for standby assistance, even directly, does not, without more, constitute an action taken under color of law.

### ii. Joint Action

Plaintiff next argues that "[w]here there is a substantial degree of joint cooperative action between a private person and state officials such that it can be said that the state has 'so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity,' acts of the private person become acts under color of law." Opp. at 12-13 (citations omitted). Because Defendant Wolfram

"was a necessary and vital participant in this deprivation" of the horse and requested the assistance of uniformed police officers in that repossession, Plaintiff concludes that there was substantial joint cooperation. Opp. at 13-14. The Court agrees that Plaintiff has alleged joint action.

"A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in joint action with the State or its agents.'" Franklin v. Fox, 312 F.3d 423, 445 (9th Cir. 2002) (quoting Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989)). "Our cases have been careful to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights," id., only finding liability where "the particular actions challenged are inextricably intertwined with those of the government," Mathis v. Pac. Gas & Elec. Co., 75 F.3d 498, 503 (9th Cir. 1996).

"At some point, as police involvement becomes increasingly important, repossession by private individuals assumes the character of state action." Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983). The court in Howerton found that landlords seeking to evict tenants acted under color of law by virtue of extensive cooperation with a police officer. While "[a] single request for the police to perform their peace-

- 16 -

keeping functions may not be sufficient to make a landlord a 'joint actor' with the state for section 1983 purposes," the landlords in that case requested and obtained police intervention at every step of the eviction.  Id. at 384-85.  The court noted that the police officer became so involved as to make an unsolicited visit to the tenants recommending that they leave, and to separately inquire whether the tenants had found a new residence.  Id. at 384.

In Harris v. City of Roseburg, 664 F.2d 1121 (9th Cir. 1981), a police officer assisted a private party in the repossession of a vehicle and the court found sufficient factual questions on the issue of joint action to preclude summary judgment.[2/]  The police officer in that case had physically moved between the plaintiff and vehicle and threatened the plaintiff with jailtime if he interfered.  Id. at 1127.  The court found that the effect of the officer's presence was to intimidate the plaintiff "to cause him to refrain from exercising his legal right to resist a repossession."  Id.

Plaintiff here alleges that Defendant Wolfram reached out to Defendant Lum and discussed her plan to retrieve the horse prior to Defendant Lum's provision of standby assistance.

---

[2/] Plaintiff cites this case as finding state action, Opp. at 13, but the Ninth Circuit did not reach that conclusion.  Instead, it found that summary judgment was precluded on that issue based on factual questions raised in the plaintiff's deposition.

Compl. ¶¶ 17-18.  At the time the horse was taken, Plaintiff
alleges that Defendant Lum intervened, asserted that the horse
belonged to Defendant Wolfram, questioned Plaintiff's claim of
ownership, and had Plaintiff fill out a police form.  Compl.
¶ 26.  Defendant Lum "displayed his authority" to permit
Defendant Wolfram to take and drive away with the horse.  Compl.
¶ 27.  Plaintiff asserts that because of the police authority,
she "capitulated" and did not prevent Jasper the horse from
being taken, although she "did not at any time invite, consent
to, or otherwise allow or permit any of the Defendants to take
'Jasper' from her."  Compl. ¶¶ 28-29.

        Unlike in Howerton, the events at issue here involved
only a single request for police assistance.  Still, Plaintiff
has alleged that Defendant Lum took considerably more action
than passively standing by, here personally participating in the
alleged seizure of the horse.  Pursuant to Defendant Lum's
authority, Defendant Wolfram took the horse and drove away,
effecting the deprivation.  Taken in the light most favorable to
Plaintiff these facts create a plausible claim of joint action.

### c. Fourth Amendment Violation

        Plaintiff argues in her Opposition that because the
City did not challenge Plaintiff's Fourth Amendment claims,
Defendants are barred from contesting these claims in another

pre-answer motion.  Opp. at 7.  Plaintiff is correct.  <u>See</u>

Federal Rule of Civil Procedure 12(g)(2).

But, as discussed below, Plaintiff fails to plead

certain remaining elements of a <u>Monell</u> claim.  The Court will

therefore dismiss the claims against the City based on these

other shortcomings, while assuming a Fourth Amendment violation

did occur.  Plaintiff's Fourth Amendment claims against

Defendants Wolfram and Lum in their official capacities must

also be dismissed for failure to comply with the <u>Monell</u>

requirements because "an official-capacity suit is, in all

respects other than name, to be treated as a suit against the

entity."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166, 105 S. Ct.

3099, 3105, 87 L. Ed. 2d 114 (1985) (citation omitted); <u>see also</u>

<u>id.</u> (citing the <u>Monell</u> requirements for an official-capacity

suit under § 1983).

### d. Fourteenth Amendment Violation

The City argues that Plaintiff has failed to

sufficiently plead a Fourteenth Amendment claim because it is

not apparent whether Plaintiff intends to assert a substantive

or procedural due process violation, and regardless fails to

include facts to support either claim.  Mot. at 5.  Plaintiff

cites to cases that have found procedural due process violations

based on deprivations of property under color of law, arguing

that she was deprived of the horse by police officers and

therefore states a Fourteenth Amendment claim.  Opp. at 14-15.
The City responds that Defendant Wolfram was not acting under
the color of law, that Defendant Lum did not perform the taking,
and that Plaintiff therefore has not alleged any governmental
taking.  Reply at 13-14.

"A procedural due process claim has two
distinct elements: (1) a deprivation of a constitutionally
protected liberty or property interest, and (2) a denial of
adequate procedural protections."  Brewster v. Bd. of Educ. of
Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998).
As to the first element, Plaintiff has alleged a deprivation of
property in the taking of her horse.  Because the Court has
found a plausible allegation of joint action, the City's
argument that Defendant Wolfram was not acting under color of
law fails at this stage.

The more difficult question is what process Plaintiff
was entitled to.  "Precisely what procedures the Due Process
Clause requires in any given case is a function of context."
Brewster, 149 F.3d at 983.  "Ordinarily, due process of law
requires [notice and] an opportunity for some kind of
hearing prior to the deprivation of a significant property
interest."  Halverson v. Skagit Cty., 42 F.3d 1257, 1260 (9th
Cir. 1994) (alteration and emphasis in original, citation
omitted).  But the Supreme Court has held that "an unauthorized

intentional deprivation of property by a state employee does not
constitute a violation of the procedural requirements of the Due
Process Clause of the Fourteenth Amendment if a meaningful
postdeprivation remedy for the loss is available." Hudson v.
Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204, 82 L. Ed. 2d
393 (1984). "For intentional, as for negligent deprivations of
property by state employees, the state's action is not complete
until and unless it provides or refuses to provide a suitable
postdeprivation remedy." Id.

　　　　The City makes no argument as to whether the
procedures afforded, either through the alleged deprivation of
the horse or made available after that deprivation, were
sufficient. The City instead claims there was no governmental
taking in this case. Reply at 13-14. Again, having found that
Plaintiff sufficiently alleged joint action, the Court concludes
that Plaintiff has pled a governmental taking and denies the
City's argument otherwise.

**e. Remaining Elements of Monell Claim**

　　　　Plaintiff alleges two bases for Monell liability. The
first relates to a conferral of favorable treatment on fellow
officers and the second relates to a failure to train. The
Court will address each of the remaining elements and concludes

that Plaintiff has failed to sufficiently allege a <u>Monell</u> claim against the City.

To establish <u>Monell</u> liability absent a formal government policy, a plaintiff "must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks omitted) (citing <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992), <u>cert. denied</u>, 510 U.S. 932 (1993)). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well-settled city policy.'" <u>Trevino</u>, 99 F.3d at 918 (citing <u>Monell</u>, 436 U.S. at 691).

A policy can be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy. <u>Long</u>, 442 F.3d at 1185-86 (9th Cir. 2006). "[A] plaintiff may prove 'the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded.'" <u>Navarro v. Block</u>, 72 F.3d 712, 714 (9th Cir. 1995) (quoting <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1349 (9th Cir. 1992)).

### i. Conferral of Favorable Treatment

#### 1. Existence of a Policy

Plaintiff here alleges a <u>de facto</u> "policy, practice, and custom of the Honolulu Police Department, its supervisors, and police officers to tolerate and ratify conferring favorable treatment by police officers on fellow officers." Compl. ¶ 63, Opp. at 17-18. To support this claim, Plaintiff alleges that (1) Defendant Lum conferred favorable treatment on Defendant Wolfram resulting in the deprivation of Plaintiff's horse, Compl. ¶¶ 23-27; (2) favorable treatment was conferred on three non-defendant HPD officers—Officers Cachola, Kimura, and Lombardi—in relation to instances of domestic violence, a reckless shooting, and a custody dispute, respectively, Compl. ¶¶ 44-51; and (3) HPD's Legislative Disciplinary Report for the Reporting Year 2018 evidences instances of HPD officers failing to properly investigate and document vehicle collisions and drunk driving incidents involving police officers, Compl. ¶ 52.

While Plaintiff here does include specific factual allegations in an attempt to support her asserted <u>de facto</u> policy, the diverse nature of the alleged violations highlights Plaintiff's overly-broad articulation of that policy. The seizure of a horse simply has nothing to do with a reckless shooting in a bar. It stretches credulity to look at Plaintiff's situation, lump in the treatment surrounding four

different criminal or civil violations, and conclude that the City must have an unspoken policy allowing officers to confer favorable treatment upon each other. Plaintiff has provided no pattern or consistency to the types of violations that occurred, and the Court cannot equate the conduct surrounding Plaintiff's alleged seizure with the varied assortment of Plaintiff's other cited incidents. "Proof of random acts or isolated events is insufficient to establish custom." Navarro, 72 F.3d at 714.

The Court finds that on the facts alleged, a general conferral of favorable treatment is simply too vague to constitute the type of permanent and well-settled policy for which the City can be liable.

## 2. Deliberate Indifference

Even if Plaintiff had sufficiently articulated a de facto policy, the generality of that articulation would defeat her ability to show the City's deliberate indifference to any particular type of violation.

The existence of a policy, without more, is insufficient to trigger Monell liability. City of Canton, 489 U.S. at 388–89. The plaintiff must also allege that the policy evidences a deliberate indifference to the plaintiff's constitutional rights. Id. at 389. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action." _Bd. of Cty. Comm'rs of Bryan Cty.,_
_Okl. v. Brown_, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391, 137 L.
Ed. 2d 626 (1997). "A plaintiff must demonstrate that a
municipal decision reflects deliberate indifference to the risk
that a violation of a particular constitutional or statutory
right will follow the decision." _Id._ at 411.

Plaintiff argues that she has alleged deliberate
indifference by pointing to written policies that HPD failed to
enforce, and, had HPD enforced those policies, the
constitutional violations alleged would have been avoided. Opp.
at 19. Specifically, Plaintiff points to HPD's failure to
enforce a policy requiring, _inter alia_, that the police "enforce
the law courteously without fear or favor" and "conduct their
private and professional lives in a manner which conforms to the
highest professional behavior and demeanor." Opp. at 19-20.
But the failure to enforce a generalized civility policy does
not "reflect[] deliberate indifference to the risk that a
violation of a particular constitutional or statutory right will
follow the decision." _Bd. of Cty. Comm'rs_, 520 U.S. at 411. As
emphasized above, the violations Plaintiff alleges have little
to do with one another, and the Court does not see how the
alleged failure to enforce a generic civility policy evidences a
known and obvious risk that Plaintiff's property would be
improperly seized from her.

Plaintiff also cites a separate policy relating to the provision of standby assistance, likewise arguing HPD's failure to enforce this policy shows deliberate indifference. Opp. at 20. But this standby assistance policy is inapplicable to all other incidents Plaintiff cites save her own, and a single instance where a policy was not enforced does not create the type of known or obvious risk required for deliberate indifference. Plaintiff has not alleged a single other instance where the standby assistance policy was not enforced or where property was improperly seized.

In sum, Plaintiff's Complaint does not contain adequate allegations that the conferral of favorable treatment on fellow officers constitutes deliberate indifference to her constitutional rights.

### 3. Moving Force

Finally, a plaintiff alleging <u>Monell</u> liability is required to show that the policy is the moving force behind the ultimate injury. <u>Oviatt</u>, 954 F.2d at 1481 (citing <u>City of Canton</u>, 489 U.S. at 391). "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury." <u>Long</u>, 442 F.3d at 1190 (quotation marks omitted) (citing <u>Gibson v. Cty. of Washoe, Nev.</u>, 290 F.3d 1175, 1196 (9th Cir. 2002), <u>overruled on other grounds by</u> <u>Castro v. Cty. of Los</u>

Angeles, 833 F.3d 1060 (9th Cir. 2016)).  A plaintiff must establish that the injury would have been avoided if the proper policies had been implemented.  Long, 442 F.3d at 1190 (citing Oviatt, 954 F.2d at 1478).

Plaintiff has likewise failed to show the conferral of favorable treatment on fellow officers was the moving force behind the alleged improper seizure of her horse.  Plaintiff's argument on this point is somewhat circular.  She argues that the policy of tolerating favorable treatment created a culture of tolerating favorable treatment, which resulted in violations of (presumably other police) policy.  Opp. at 22.  But the policies Plaintiff claims were violated are either not closely related to her injury or totally unrelated to the prior injuries she alleges.  Again, the violations Plaintiff alleges are too diverse, and the policy Plaintiff alleges was violated too generic, for the Court to find a close relationship between the two.

### ii. Failure to Train

Plaintiff also asserts a de facto policy where officers "were not adequately trained, investigated, supervised, disciplined, counseled, and/or retrained by the Honolulu Police Department regarding properly responding to miscellaneous assist and standby cases and acting impartially when their fellow

officers are involved in an incident."[3]  Compl. ¶ 64; Opp.

at 18.  In effect, Plaintiff argues that the _de facto_ policy was

a choice not to enforce existing written policies in a way that

resulted in favorable treatment of police officers.

In support of this claim, Plaintiff points to the two

formal policies discussed above, one relating to professional

behavior and one relating to the provision of standby

assistance.  Compl. ¶¶ 33-38.  Plaintiff alleges that the

Defendant Officers were trained and instructed pursuant to these

formal policies, Compl. ¶ 32, but "were never adequately trained

and/or supervised based upon the conduct exhibited by individual

Defendant Officers in the seizure of Plaintiff's horse

'Jasper,'" Compl. ¶ 39.  Plaintiff further alleges that the City

"never reviewed individual Defendant Officers' conduct,

disciplined and/or retrained individual Defendant Officers in

accordance" with the policy, constituting a failure to supervise

or discipline.  Compl. ¶ 40.  Lastly, in her Opposition,

Plaintiff points to the favorable treatment allegedly conferred

on the three non-defendant HPD officers, arguing that "when

those officers neglected to enforce the law and existing

---

[3] The City argues that Plaintiff asserts a third policy involving "the Honolulu Police Department's failure to adopt, implement, and enforce rules, procedures, regulations, policies, and/or practices to prevent this type of misconduct."  Compl. ¶ 65; Mot. at 9-10.  In her Opposition, Plaintiff does not refer to this as a separate policy, and the Court therefore understands Plaintiff's allegation to be part of her failure to train claim.

departmental orders and policies in response to instances where fellow officers . . . committed acts of misconduct and/or criminal wrongdoing," this was "part and parcel of the de facto policy not to train, supervise, investigate, counsel, and discipline officers."  Opp. at 18.

To allege § 1983 municipal liability based on a failure to train, Plaintiff must claim that (1) the existing training program is inadequate in relation to the tasks the particular officers must perform; (2) the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact; and (3) the inadequacy of the training actually caused the deprivation of the alleged constitutional right.  Merritt v. Cty. of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  Connick v. Thompson, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) (citing Bd. of Cty. Comm'rs, 520 U.S. at 409).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  Id. at 61.  "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers . . . can reasonably be said to have been

deliberately indifferent to the need." <u>City of Canton</u>, 489 U.S. at 390.

Plaintiff fails to adequately allege a failure to train claim. First, Plaintiff has not provided any allegations regarding how the current training program is deficient, except her conclusory statement that because her rights were violated, the training must have been deficient. But "plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." <u>City of Canton</u>, 489 U.S. at 391.

Second, as reviewed above, Plaintiff asserts a scattered array of violations including reckless shooting, domestic violence, intoxicated driving, and improper seizure. The variety of these allegations, without any obvious tie between them, fails to reasonably suggest the City was deliberately indifferent to a need for more or different training. Plaintiff attempts to get around this by stating that HPD failed to enforce its policies. This argument is undermined by Plaintiff's citation to a policy relating to standby procedures applicable only in her own case, and a separate citation to a vague and general civility policy, for which it is difficult to ascertain what type of training Plaintiff might allege would have avoided the violations at issue. Even assuming such a <u>de facto</u> policy existed, the Court cannot

plausibly infer a causal connection between any failure to enforce such policy and the alleged deprivations.  This is insufficient to support a claim for failure to train.

## II.  Negligent Training, Supervision, and/or Discipline

Plaintiff's sixth cause of action alleges negligent training, supervision, and/or discipline against the City. Compl. ¶¶ 71-74.  "Under Hawaii law, before a plaintiff can establish a claim for negligent training and/or supervision, the plaintiff must establish that 'the employer knew or should have known of the necessity and opportunity for exercising such control.'"  Otani v. City & Cty. of Haw., 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998) (quoting Abraham v. S.E. Onorato Garages, 50 Haw. 628, 639, 446 P.2d 821, 826 (1968)).  "The key to any claim for negligent training or supervision is foreseeability.  If an employer has not been put on notice of the necessity for exercising a greater degree of control or supervision over a particular employee, the employer cannot be held liable as a matter of law."  Id.

Plaintiff's only factual allegation that the City was on notice is a reference to a previous lawsuit brought against Defendant Lum for a violation of a subject's Fourth Amendment rights.  Opp. at 23.  The cited lawsuit was brought roughly fifteen years ago, involved allegations of excessive force (not seizure of property), where the City and Defendant Lum denied

- 31 -

that excessive force was used, and ultimately settled in 2008. See Case No. 1:05-cv-00630-KSC (cited in Compl. ¶ 31). This single complaint settled a dozen years ago does not suffice to put the City on notice. Nor does Plaintiff include any argument or allegations that the City was on notice with relation to Defendant Wolfram.

The Court holds that Plaintiff fails to state a claim for negligent training, supervision, and/or discipline.

## III. Vicarious Liability

Plaintiff alleges the City is liable for the negligence of Defendant Officers. Compl. ¶ 77. "Under Hawaii law, a municipality can have respondeat superior liability for torts maliciously committed by an employee acting within the scope of his authority." McCormack v. City & Cty. of Honolulu, 762 F. Supp. 2d 1246, 1253 (D. Haw. 2011). The employee must be motivated by malice in his commission of the tort, and the plaintiff is required to allege malice in the complaint. Alexander v. City & Cty. of Honolulu, 545 F. Supp. 2d 1122, 1136 (D. Haw. 2008). Plaintiff's allegations fail to show that Defendant Wolfram was acting within the scope of her authority and that Defendant Lum acted with malice.

## a. Scope of Authority

To determine what constitutes the scope of authority, Hawaii has adopted the test from the Restatement (Second) of Agency § 228:

> (1) Conduct of a servant is within the scope of employment [or authority] if, but only if:
> > (a) it is of the kind he is employed to perform;
> > (b) it occurs substantially within the authorized time and space limits; [and]
> > (c) it is actuated, at least in part, by a purpose to serve the master[.]
> > . . .
> (2) Conduct of a servant is not within the scope of employment [or authority] if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

State v. Hoshijo ex rel. White, 102 Haw. 307, 320, 76 P.3d 550, 563 (2003) (alterations in original) (quoting Wong-Leong v. Hawaiian Indep. Refinery, Inc., 76 Haw. 433, 438, 879 P.2d 538, 543 (1994)).

In describing the events that transpired, Plaintiff states that "the actions of the individually named Defendant Officers were . . . beyond the scope of their legal authority," Compl. ¶ 41, but when later asserting her vicarious liability cause of action, she inconsistently recites the required element that "Defendant Officers acted within the scope of their employment . . . as Honolulu Police Department officers," Compl.

¶ 76.  Even putting aside the inconsistencies, these are conclusory statements of legal elements and inadequate to state a claim.

Looking at Plaintiff's factual allegations, she fails to show that Defendant Wolfram was acting within the scope of her authority as a police officer when taking the horse. Plaintiff makes clear that Defendant Wolfram went to the stables on a personal quest to retrieve the horse, and Plaintiff has articulated no purpose Defendant Wolfram might have had to serve the HPD in so doing.  Because Defendant Wolfram was not acting within the scope of her authority, Plaintiff cannot maintain a claim of vicarious liability against the City based on Defendant Wolfram's actions.

### b. Malice

The Court finds that Defendant Lum was acting within the scope of his authority, having received the request for standby assistance through the District 4 station of the HPD, Compl. ¶¶ 19-20, but that Plaintiff has failed to allege malice.

"For tort law claims other than defamation, courts apply an 'actual malice' test."  Nakagawa v. Cty. of Maui, No. CIV. 11-00130 DKW, 2014 WL 1213558, at *13 (D. Haw. Mar. 21, 2014) (citations omitted).  Actual malice is defined as "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal

rights, and ill will; wickedness of heart." Id. at *14 (quoting Awakuni v. Awana, 115 Haw. 126, 141, 165 P.3d 1027, 1042 (2007)). A plaintiff is not required to plead the word "malice" in the complaint, but must provide some allegations showing that the official was motivated by malice and not by an otherwise proper purpose. Kosegarten v. Dep't of the Prosecuting Attorney, 892 F. Supp. 2d 1245, 1265 (D. Haw. 2012). "Under the dismissal standard, all that is required is that the plaintiff plead sufficient factual matter, accepted as true, to state a plausible argument that the defendant acted with malice." Id.

Plaintiff provides the following allegations in relation to Defendant Lum's actions: (1) Defendant Lum was contacted by Defendant Wolfram who informed Defendant Lum that she had leased a horse to Plaintiff and needed assistance to take the horse back; (2) Defendant Lum received a formal request from his police station to provide that standby assistance; (3) Defendant Wolfram provided Defendant Lum with a medical record, a lease agreement, and text messages regarding the horse; (4) Defendant Lum only "intervened" after escalating verbal arguments ensued; and (5) Defendant Lum asked Plaintiff to fill out an HPD form documenting her claim of ownership. Compl. ¶¶ 17-28. None of these allegations support a finding of malice.

Plaintiff does allege that Defendant Lum refused to look at text messages on Plaintiff's cellphone and that his police report contained a section entitled "impartiality." Compl. ¶¶ 26, 30. Taking these allegations as true, they fail to plausibly show that Defendant Lum had the intent to commit a wrongful act or that he recklessly disregarded Plaintiff's rights. Accordingly, Plaintiff has not sufficiently pled vicarious liability.

## IV. Official-Capacity Liability

The City argues that claims against the Defendant Officers in their official capacities should be dismissed as duplicative of the claims against the City. Plaintiff has not opposed the argument.

Plaintiff brings four causes of action against the Defendant Officers. Where Plaintiff has sued both the City and the Defendant Officers in their official capacities, the claims against the Defendant Officers in their official capacities are dismissed as duplicative. Carnell v. Grimm, 872 F. Supp. 746, 752 (D. Haw. 1994) (dismissing claims against police officers sued in their official capacities as duplicative of claims against the City and County of Honolulu); see also Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("[I]f individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also

being sued, then the claims against the individuals are duplicative and should be dismissed.").

The first and second causes of action allege Fourth and Fourteenth Amendment violations against the Officer Defendants. To the extent that these causes of action are asserted against the officers in their official capacities, they are duplicative of the third cause of action for municipal liability. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (citing Monell requirements for § 1983 claims against officers in their official capacities). The first and second causes of action against the officers in their official capacities are therefore dismissed. The first and second causes of action remain against the officers in their individual capacities.

The fifth cause of action alleges negligence by the Officer Defendants. To the extent that this cause of action is asserted against the officers in their official capacities, it is duplicative of the seventh cause of action against the City for the negligence of the Officer Defendants, since "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"[4] Kentucky v. Graham, 473 U.S. at 165 (quoting Monell,

---

[4] Malice is required both for a claim of vicarious liability and for a
(Continued . . .)

- 37 -

436 U.S. at 690, n.55).  The fifth cause of action against the officers in their official capacities is therefore dismissed. The fifth cause of action remains against the officers in their individual capacities.

The fourth cause of action alleges intentional infliction of emotional distress.  This is not duplicative of another claim against the City.  The fourth cause of action against the officers in their official capacities—which is, in effect, a claim against the City—as well as against the officers in their individual capacities remains at this time.

The Court notes that to the extent that the fourth and fifth causes of action allege torts against officers in their official capacities, there may be concerns of sovereign immunity.  See Hall v. State of Hawaii, 791 F.2d 759, 761 (9th Cir. 1986) ("Absent a state's unequivocal consent, the Eleventh Amendment bars a federal court from entertaining a suit against that state, or one of its agencies or departments, based on state law.").  The Court does not address these concerns here because the City has not made this argument.

---

tort claim against the officers in their official capacities.  Alexander v. City & Cty. of Honolulu, 545 F. Supp. 2d 1122, 1136 (D. Haw. 2008) ("For nonjudicial officers to be liable for state law tort claims, the plaintiff must prove malice by clear and convincing evidence.  In line with the 'malice' requirement for nonjudicial officers, the State of Hawaii recognizes a respondeat superior theory for acts of agents of a municipality in regard to torts that an employee 'maliciously' commits in the scope of his authority.") (internal citations and quotations omitted).

## V. Doe Defendants

The City seeks dismissal of the claims against the Doe Defendants. Plaintiff has not opposed the argument.

The City argues that "[p]leading fictitious Doe defendants is improper in federal court." Mot. at 15 (quoting State Farm Mut. Auto. Ins. Co. v. Ireland, Civ No. 2:07-CV-01541-RCJRJJ, 2009 WL 4280282, at *3 (D. Nev. Nov. 30, 2009) (citing Turner v. County of Los Angeles, 18 F. App'x. 592, 596 (9th Cir. 2001) and Graziose v. Am. Home Prods. Corp., 202 F.R.D. 638, 643 (D. Nev. 2001))). According to the City, "[a] claim against Does has no effect in federal court," and "[d]ismissal without prejudice of the claims against the Doe defendants is proper." Mot. at 15 (quoting State Farm, 2009 WL 4280282 at *3).

Courts in the Ninth Circuit have recognized that "[g]enerally, 'Doe' pleading is improper in federal court. The Federal Rules do not provide for the use of fictitious defendants." Buckheit v. Dennis, 713 F. Supp. 2d. 910, 918 n. 4 (N.D. Cal. 2010) (citing Bogan v. Keene Corp., 852 F.2d 1238, 1239 (9th Cir.1988); Fifty Assocs. v. Prudential Ins. Co., 446 F.2d 1187, 1191 (9th Cir.1970); and McMillan v. Dept. of the Interior, 907 F. Supp. 322 (D. Nev. 1995)).

When situations arise, however, "where the identity of alleged defendant[] [is] not [] known prior to the filing of a

complaint[,] the plaintiff should be given an opportunity
through discovery to identify the unknown defendants, unless it
is clear that discovery would not uncover the identities, or
that the complaint would be dismissed on other grounds."
Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999)
(alterations in original) (quoting Gillespie v. Civiletti, 629
F.2d 637, 642 (9th Cir. 1980)).  While "a plaintiff may refer to
unknown defendants as Defendant John Doe 1, John Doe 2, John
Doe 3 . . . he must go further and allege facts to support how
each particular doe defendant violated" the law.  Seina v. Fed.
Det. Ctr. Honolulu, No. CV 16-00051 LEK/BMK, 2016 WL 916367, at
*9 (D. Haw. Mar. 7, 2016).

     Plaintiff's allegations in relation to the doe
defendants are, at best, minimal.  The clearest allegation is in
paragraph 16 of the Complaint, where Plaintiff alleges that
"Defendant WOLFRAM notified her supervisors in District 8, where
she is assigned, of her situation and was instructed by them
(JOHN and/or JANE DOE defendants) to request 'standby' from
District 4, where Defendant LUM is assigned."  But Plaintiff
provides no explanation of how or why that instruction violated
the law.

     Plaintiff also alleges in paragraph 3 of the Complaint
that "JOHN and/or JANE DOES 1-10 failed to adopt, implement, and
enforce rules, procedures, regulations, policies, and/or

practices to prevent the deprivation of property suffered by the Plaintiff." This conclusory statement fails to provide any specific facts regarding the Doe Defendants' connection to and participation in the alleged violations.

Plaintiff inconsistently suggests other officers may have been present at the stables, and the Court is unclear whether Plaintiff intends for other officers to be sued as Doe Defendants. In paragraph 15 of the Complaint, Plaintiff states that Defendant Wolfram "brought several uniformed Honolulu Police Department officers with her" to the stables. Later, Plaintiff asserts that Defendant Lum and non-defendant Officer Chong were present at the stables, without reference to additional officers. See Compl. ¶¶ 19-22. If Plaintiff intends to assert claims against other officers present during at the encounter but is unaware of the identity of those officers, she should make that clear.

Accordingly, the Court will dismiss all Doe Defendants named in the Complaint. Plaintiff is granted leave to amend the Complaint.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant the City and County of Honolulu's Motion to Dismiss, ECF No. 11. The Court DISMISSES all claims

against the City.  The Court further DISMISSES counts one, two, and five as against the Officer Defendants in their official capacities, and DISMISSES the Doe Defendants entirely.  Count four against the Officer Defendants in their official capacities remains.  As previously noted, the City's motion does not relate to the claims against the Officer Defendants in their individual capacities.  Thus, the first, second, fourth, and fifth causes of action for Fourth Amendment violations, Fourteenth Amendment violations, intentional infliction of emotional distress, and negligence, respectively, remain against the Officer Defendants in their individual capacities.

Because Plaintiff may be able to cure some of the pleading defects via amendment, leave to amend is granted and the Complaint is dismissed without prejudice.  Any amended complaint must be filed within thirty days of the issuance of this Order and should comply with the guidance and standards set forth herein.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, February 25, 2020.

_____
Alan C. Kay
Sr. United States District Judge

Hollandsworth v. City and County of Honolulu, et al., Civ. No. 19-00587 ACK-WRP, Order Granting in Part and Denying in Part the City's Motion to Dismiss.

- 42 -