IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

```
                              )
KIMBERLY HOLLANDSWORTH,        )
                              )
          Plaintiff,           )
                              )
      v.                       )     Civ. No. 19-00587 ACK-WRP
                              )
CITY AND COUNTY OF HONOLULU;   )
LIANNE WOLFRAM; JOSEPH C.K.    )
LUM; JOHN AND/OR JANE DOES     )
1-10,                         )
                              )
          Defendants.          )
                              )
```

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LUM'S MOTION TO DISMISS

This case involves a dispute over the ownership and confrontational retrieval of a horse. Plaintiff Kimberly Hollandsworth ("Plaintiff") alleges that Defendant Lianne Wolfram ("Defendant Wolfram") gave her a horse, then later changed her mind and used police assistance to retrieve that horse. Plaintiff brings claims against, inter alia, Defendant Joseph Lum ("Defendant Lum")—the police officer who provided standby assistance to Defendant Wolfram. Defendant Lum now seeks dismissal of the claims asserted against him. For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART Defendant Lum's Motion to Dismiss for Failure to State a Claim, ECF No. 21.

- 1 -

## FACTUAL BACKGROUND

The following facts are repeated with minor alterations from the Court's prior February 25, 2020 Order, ECF No. 18 (the "Prior Order").

This case relates to a dispute over the ownership of a horse named "Jasper." ECF No. 1 ("Compl."), ¶ 11. Plaintiff alleges that Defendant Wolfram, a Honolulu Police Department ("HPD") officer, gave the horse to Plaintiff. Compl. ¶ 12, 15. Defendant Wolfram then changed her mind about giving the horse to Plaintiff and sought to take the horse back. Compl. ¶ 14.

Plaintiff alleges that Defendant Wolfram notified her HPD supervisors at District 8 of her intent to retrieve the horse. Compl. ¶ 16. Defendant Wolfram was instructed to contact District 4 and request standby assistance. Compl. ¶ 16. Defendant Wolfram directly contacted HPD Officer Defendant Lum at District 4, who agreed to assist and requested that Defendant Wolfram bring documentation of her ownership rights. Compl. ¶ 18. Defendant Wolfram later contacted the District 4 station to request standby assistance. Compl. ¶ 19. That request was relayed to Defendant Lum and one other HPD officer, both of whom met Defendant Wolfram at the stables. Compl. ¶¶ 20-22. Defendant Wolfram provided a medical record, lease agreement, and text messages indicating that she owned the horse. Compl. ¶ 23.

Shortly thereafter, Plaintiff arrived at the stables. Compl. ¶ 24.  Plaintiff and Defendant Wolfram argued over the ownership of the horse until Defendant Lum intervened.  Compl. ¶¶ 24-26.  Defendant Lum asserted that he was in charge and asked Plaintiff to fill out an HPD form to explain her claim of ownership.  Compl. ¶ 26.  Defendant Lum determined that Defendant Wolfram owned the horse, so he "displayed his authority" to permit Defendant Wolfram to take the horse, which Plaintiff argues was an improper seizure of her property. Compl. ¶¶ 27, 42.

Based on this conduct, Plaintiff asserts claims against Defendant Officers Wolfram and Lum, and against Defendant the City and County of Honolulu (the "City").[1]  As against Defendant Lum, Plaintiff asserts (1) a Fourth Amendment violation; (2) a Fourteenth Amendment violation; (3) intentional infliction of emotional distress; and (4) negligence.  Compl. ¶¶ 54-77.

On March 27, 2020, Defendant Lum filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint.  ECF No. 24.  Plaintiff filed her Opposition on August 10, and Defendant Lum filed his Reply on August 17.  A telephonic hearing was held on August 31.

---

[1] The City previously moved to dismiss the claims against it, ECF No. 11, which the Court granted in part and denied in part in the Prior Order, ECF No. 18.  The Court will review the holdings of the Prior Order when relevant to its subsequent discussion.

**STANDARD**

Rule 12(b)(6) authorizes the Court to dismiss a
complaint that fails "to state a claim upon which relief can be
granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in
conjunction with Rule 8(a), which requires only "a short and
plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8
does not require detailed factual allegations, "it demands more
than an unadorned, the-defendant-unlawfully-harmed-me
accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct.
1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d
929 (2007)).  "A pleading that offers 'labels and conclusions'
or 'a formulaic recitation of the elements of a cause of action
will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).

The Court must "accept as true all well-pleaded
allegations of material fact, and construe them in the light
most favorable to the non-moving party."  Sateriale v. R.J.
Reynolds Tobacco Co., 697 F.3d 777, 784 (9th Cir. 2012)
(citation omitted).  "To survive a motion to dismiss, a
complaint must contain sufficient factual matter to 'state a
claim to relief that is plausible on its face.'"  Id. (quoting
Iqbal, 556 U.S. at 678).  "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to

- 4 -

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. (citing Twombly, 550 U.S. at 555). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

When the Court dismisses a complaint pursuant to Rule 12(b)(6) it should grant leave to amend unless the pleading cannot be cured by new factual allegations. OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

## DISCUSSION

Defendant Lum argues that he is entitled to dismissal of each of the claims asserted against him because those claims are both insufficiently pled, and because Defendant Lum is entitled to state and federal immunities. The Court begins by

discussing the constitutional claims asserted under 42 U.S.C. § 1983 and then turns to the state law claims.

**I.   Section 1983 Claims**

   **A.   Elements of § 1983 and Qualified Immunity**

      Plaintiff's Fourth and Fourteenth Amendment claims against Defendant Lum are brought under § 1983.   Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.   "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–55, 101 L. Ed. 2d 40 (1988).

      Police officers may be shielded from liability under § 1983 based on the doctrine of qualified immunity.   Qualified immunity protects government officials who perform discretionary functions from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson

- 6 -

v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  "To determine whether an individual officer is entitled to qualified immunity, we ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." C.B. v. City of Sonora, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing Pearson, 555 U.S. at 232, 236).  "[C]ourts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (citing Pearson, 555 U.S. at 236).

    "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)).  In conducting this analysis, courts are "not to define clearly established law at a high level of generality," and should instead focus on "whether the violative nature of particular conduct is clearly established." Ashcroft, 563 U.S. at 742.  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Mullenix, 136 S. Ct. at 308 (quoting Malley

v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271
(1986)).

Defendant Lum argues that each constitutional claim is
insufficiently pled, and that he is entitled to qualified
immunity regardless because it was not clearly established that
his actions would violate the law.  The Court will consider each
constitutional claim in turn, first determining whether
Plaintiff has sufficiently stated a claim for a violation of the
respective right, and second considering whether the identified
right was clearly established.

**B.    Fourteenth Amendment**

Plaintiff asserts that Defendant Lum violated her
Fourteenth Amendment rights by depriving her of property without
due process of law.  Compl. ¶ 59.  Plaintiff's Complaint does
not indicate whether she intends to assert a substantive or
procedural due process violation, but in her Opposition, she
clarifies that she intends to assert a procedural due process
claim.  Opp. at 8.

**1.    Legal Framework**

"A procedural due process claim has two distinct
elements: (1) a deprivation of a constitutionally protected
liberty or property interest, and (2) a denial of adequate
procedural protections."  Brewster v. Bd. of Educ. of Lynwood
Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998).  In order

to determine whether the provided procedural protections are
adequate, courts weigh the three factors announced in Mathews v.
Eldridge:

> First, the private interest that will be affected
> by the official action; second, the risk of an
> erroneous deprivation of such interest through
> the procedures used, and the probable value, if
> any, of additional or substitute procedural
> safeguards; and finally, the Government's
> interest, including the function involved and the
> fiscal and administrative burdens that the
> additional or substitute procedural requirement
> would entail.

424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976).

Although application of these factors generally
"requires some kind of a hearing before the State deprives a
person of liberty or property," Zinermon v. Burch, 494 U.S. 113,
127, 110 S. Ct. 975, 984, 108 L. Ed. 2d 100 (1990) (citations
omitted), application of the Mathews factors creates "numerous
exceptions to this general rule." Clement v. City of Glendale,
518 F.3d 1090, 1093–94 (9th Cir. 2008). For example, a pre-
deprivation notice and hearing may not be required in an
emergency, or when notice would defeat the purpose of a seizure.
Id. (citing Zinermon, 494 U.S. at 132 and Mathews, 424 U.S. at
335).

Relevant here, the Supreme Court has announced an
exception in circumstances where a state officer acts in a
"random and unauthorized" manner. Zinermon, 494 U.S. at 127.

That exception is derived from two cases.  In Parratt v. Taylor, 451 U.S. 527, 534, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986), prison officers negligently lost a prisoner's mail.  In Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), a prison officer, acting on an apparent personal vendetta, maliciously destroyed a prisoner's property.  In each case, the State could not have foreseen the specific deprivation and "no predeprivation safeguards would be of use in preventing the kind of deprivation alleged."  Zinermon, 494 U.S. at 139 (discussing Hudson and Parratt).  Accordingly, under the so-called Parratt-Hudson doctrine, "postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."  Id. at 128.

The Supreme Court went on to hold that the Parratt-Hudson doctrine did not apply in Zinermon itself.  The actions of the officers in that case could not be properly deemed "random and unauthorized" because (1) any erroneous deprivation would occur at a predictable time, and thus was foreseeable; (2) the creation of a pre-deprivation process could have averted the deprivation; and (3) the officials had acted pursuant to broad "power and authority to effect the very deprivation complained

- 10 -

of" and their actions thus were not unauthorized.  Id. at 136-38.  Accordingly, the Zinermon plaintiff had sufficiently stated a claim for a violation of his procedural due process rights irrespective of the availability of post-deprivation tort remedies.[2/]  Id. at 139.

Defendant Lum argues that he did not violate Plaintiff's procedural due process rights because (1) he did not unlawfully seize the horse, so he did not deprive Plaintiff of a constitutionally protected property interest; (2) he provided due process by taking Plaintiff's statement and determining Defendant Wolfram's account was more credible; and (3) Plaintiff has adequate post-deprivation process through a state court action.  The Court considers each argument.

### 2. Whether Plaintiff Sufficiently Stated an Underlying Violation

#### a. Deprivation of a Constitutionally Protected Property Interest

Defendant Lum first argues that because he did not personally perform the taking, he could not have deprived

---

[2/] Applying Zinermon, the Ninth Circuit found that post-deprivation tort remedies were likewise insufficient in Honey v. Distelrath, 195 F.3d 531 (9th Cir. 1999).  In Honey, the parties agreed that an employee "was denied procedural due process in his termination," but the defendants argued that the plaintiff's successful lawsuit in state court regarding that termination had offered a sufficient post-deprivation remedy.  Id. at 532.  The Ninth Circuit disagreed.  The actions of the officials "were not random and unauthorized because the defendants in this case had the authority to effect the very deprivation complained of, and the duty to afford Honey procedural due process."  Id. at 534.  The officials "were in positions with substantial discretionary powers" and "were responsible for the procedurally deficient termination hearings, and thus the deprivation was foreseeable because it was their intent for it to occur."  Id.

Plaintiff of her property as required for a procedural due process claim.  Mot. at 6.

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  If a police officer was a "mere bystander" to his colleagues' misconduct, he is not properly subject to § 1983 liability. Hopkins v. Bonvicino, 573 F.3d 752, 770 (9th Cir. 2009).  On the other hand, officers may be liable where they were "integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." Id.

Here, Plaintiff alleges that at the time the horse was taken, Defendant Lum intervened, asserted that the horse belonged to Defendant Wolfram, questioned Plaintiff's claim of ownership, and had Plaintiff fill out a police form.  Compl. ¶ 26.  Defendant Lum "displayed his authority" to permit Defendant Wolfram to take and drive away with the horse.  Compl. ¶ 27.  Plaintiff asserts that because of Defendant Lum's police authority, she "capitulated" and did not prevent Jasper the horse from being taken, although she "did not at any time invite, consent to, or otherwise allow or permit any of the Defendants to take 'Jasper' from her."  Compl. ¶¶ 28-29.  Even

though it was Defendant Wolfram—not Defendant Lum—who ultimately drove away with the horse, these facts are sufficient to plausibly allege that Defendant Lum was an integral participant in the seizure.

> The Ninth Circuit has held as much, explaining:
>
> [T]here may be a deprivation within the meaning of [§] 1983 not only when there has been an actual "taking" of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession.

Harris v. City of Roseburg, 664 F.2d 1121, 1127 (9th Cir. 1981).

Accordingly, the Court rejects Defendant Lum's argument that, because he did not personally take the horse, he is excused from liability under the Fourteenth Amendment.

### b.  Adequate Procedural Protections

Defendant Lum next argues that Plaintiff received adequate process because Defendant Lum took Plaintiff's statement and determined that Defendant Wolfram's account was more credible.  Reply at 5-6.  The Court disagrees.  Whatever process the Mathews test requires in this case, more is required than Defendant Lum's personal conviction that Defendant Wolfram was the proper legal owner.

The first Mathews factor looks to the private interest affected.  Here, Plaintiff alleges that she was deprived of a

property interest in the horse.  The second Mathews factor looks

to the risk of erroneous deprivation through the procedures

used, and whether a different procedure would better protect the

relevant interest.  Here, given the apparent lack of any prior

process and the contentious nature of the dispute—contention

evidenced by the argumentative text messages shown to Defendant

Lum, the verbal escalation during the incident, and the mere

fact police standby assistance was being requested in order to

retrieve disputed property—the risk of an erroneous deprivation

through Defendant Lum's chosen procedures was great.  Requiring

some kind of pre-deprivation process, such as obtaining a court

order, would have dramatically reduced the risk of an erroneous

deprivation.

Finally, the third Mathews factor considers the

government's interest, including the burden of additional

procedures.  In conducting the inquiry as to what procedural

protections are constitutionally required in a particular case,

the Court notes that it considers the burden to the government—

not to the individual employee—of more or different procedures.

Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47

L. Ed. 2d 18 (1976).[3/]  Here, aside from some additional judicial

---

[3/] Specifically, the Mathews Court explained "that identification of the
specific dictates of due process generally requires consideration of . . .
the Government's interest, including the function involved and the fiscal and
(Continued . . .)

resources relevant in any litigated dispute, there is no apparent fiscal or administrative burden in the government requiring Defendant Wolfram to obtain a court order prior to using authority as a police officer to retrieve a horse.

The Court emphasizes that application of the Mathews test usually requires a hearing before the deprivation. Zinermon, 494 U.S. at 127 (collecting cases).  This case does not provide unique circumstances removing it from that general rule.  In fact, this appears to be the type of straightforward case where providing Plaintiff a notice and opportunity to be heard prior to the deprivation would cleanly resolve any due process concerns without any significant burden to the government.

Plaintiff alleges that she had no notice or opportunity to be heard before Defendant Lum deprived her of the horse.[4/]  While certain exceptions are available to the notice and hearing requirement, a police officer's belief that he correctly determined legal ownership is not one.  Defendant

---

administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335 (citation omitted); see also Zinermon, 494 U.S. at 130 (explaining that the proper inquiry is "whether the state is in a position to provide for predeprivation process" (quoting Hudson, 468 U.S. at 534)).

[4/] The relevant opportunity to be heard is the right to some kind of hearing.  Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) ("This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest," and discussing whether different forms of hearings satisfy that requirement). Thus, Defendant Lum cannot properly argue that he adequately "heard" Plaintiff during the course of the interaction.

Lum's unilateral decision as to the claim of ownership does not comply with the requirements of due process.

### c.    Post-Deprivation Process by State Court Action

Finally, Defendant Lum argues that Plaintiff has adequate post-deprivation process through a state court action.

This argument fails because Defendant Lum's actions were not "random and unauthorized" under Zinermon, and accordingly a post-deprivation tort remedy does not substitute for pre-deprivation process.  Applying the factors considered in Zinermon, it was here foreseeable that sending a police officer to provide standby assistance during the retrieval of a horse would result in that officer's intervention.  Unlike Parratt and Hudson, this is not the type of negligent or malicious act that would occur no matter what process was given.  Further, Defendant Lum was acting pursuant to his authority in providing the standby assistance (even though he ultimately exceeded the permissible bounds of that authority), and it was his intent that Defendant Wolfram be permitted to leave with the horse. See Honey, 195 F.3d at 534 (holding that "the acts at issue in this case were not random and unauthorized because the defendants in this case had the authority to effect the very deprivation complained of"); see also id. ("[E]ven acts in violation of established law may be considered 'authorized.'").

Because Defendant Lum's acts do not qualify as "random and unauthorized," and he does not otherwise invoke an exception to the general requirement for notice and an opportunity to be heard prior to a deprivation of property, a post-deprivation remedy in the form of a state court action does not suffice.

### 3.   Whether the Right was Clearly Established

"For more than a century the central meaning of procedural due process has been clear:  Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." Fuentes v. Shevin, 407 U.S. 67, 80, 92 S. Ct. 1983, 1994, 32 L. Ed. 2d 556 (1972) (internal quotation marks and citation omitted).  The Supreme Court has explained that the "purpose of this requirement" is "to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party." Id. at 80-81.

As discussed above, the determination of what process is due in any particular situation requires a balancing of certain factors.  "[B]ecause [the] procedural due process analysis essentially boils down to an ad hoc balancing inquiry, the law regarding procedural due process claims 'can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent.'"  Brewster

_v. Bd. of Educ. of Lynwood Unified Sch. Dist._, 149 F.3d 971, 983 (9th Cir. 1998) (quoting _Baker v. Racansky_, 887 F.2d 183, 187 (9th Cir. 1989)).

The Court finds that cases analyzing police standby assistance during acts of repossession clearly establish the law. In _Harris v. City of Roseburg_, 664 F.2d 1121, 1127 (9th Cir. 1981), a police officer provided standby assistance during a creditor's illegal repossession of a tractor. In that case, "[n]o physical altercation took place," and there was "no evidence that either of the police officers ever shoved, struck or even touched Harris." _Id._ at 1129. Further, there was no "evidence that the police officers directly assisted in the actual repossession of the tractor." _Id._ A police officer did, however, instruct Harris to get away from the tractor, physically positioned himself between Harris and the tractor, and told Harris that he would send Harris to jail if he interfered. _Id._ at 1127. The court concluded that the police officer's presence had intimidated Harris from exercising his right to contest the repossession, and the aid provided by the police officer was sufficient to constitute a deprivation.[5/] _Id._

Defendant Lum argues that _Harris_ is distinguishable because he never threatened to send Plaintiff to jail. But the

---

[5/] In _Harris_, the officer was ultimately entitled to qualified immunity because at that time, the law was not clearly established. _Harris_ was decided approximately forty years ago and served to clarify the law.

Harris decision did not turn on that single statement alone;
rather, looking at the circumstances as a whole, the court found
that the officer had so intimidated Harris that Harris did not
exercise his legal right to resist the repossession.  According
to Plaintiff's Complaint, the same is true here.

        Defendant Lum also cites Meyers v. Redwood City, 400
F.3d 765 (9th Cir. 2005), in which the Ninth Circuit found that
"[e]ven with a copy of Harris in their back pockets, the
officers could not have determined at what point in the middle
of this messy repossession they deprived Meyers of her property
without due process of law."  Id. at 774.  But unlike this case,
and "[u]nlike in Harris," the officers in Meyers "were not
alerted in advance to the repossession and asked to 'stand by'
to ensure that the repossession went smoothly."  Id. at 772.  If
they had, there may have been an opportunity to provide notice
and an opportunity to be heard.  Defendant Lum had that
opportunity in this case.

        In contrast, the officers in Meyers "were summoned to
a scene not of their making" that already involved violence and
where both parties asserted a citizen's arrest of the other.
Id.  To resolve the fight peacefully, the officers explained
that either the debtor could permit the repossession to go
forward and straighten out the dispute with the credit union the
next day, or else they would have to take her to the police

station on the citizen's arrest.  On these facts, the court held

that "[p]resenting [the plaintiff] with such a choice—albeit a

choice between two unpleasant consequences—does not violate her

Due Process or Fourth Amendment rights."  Id. at 773.  In so

holding, the court noted that the officers presented that choice

"without resolving" who was "entitled in law and fact" to the

car.  Id. at 773-74.

          The present case falls within the strictures of Harris

and is distinct from the divergent holding in Meyers.[6/]

Defendant Lum was notified in advance both by Defendant Wolfram

personally and by the police station that he was being asked to

provide standby assistance while Defendant Wolfram retrieved the

horse.  Defendant Lum arrived on the scene before any dispute

had occurred (indeed before Plaintiff herself had arrived), and

he asserted that he was in charge of the situation and entitled

to determine who would take the horse.  The Court again

emphasizes the default rule that notice and an opportunity to be

heard should be provided prior to the state assisting in

depriving a person of property.  Fuentes, Zinermon, and Harris

_____

[6/] The Court notes that Plaintiff additionally cites Abbott v. Latshaw,
164 F.3d 141 (3d Cir. 1998), which relied on Fuentes to find a clearly
established right had been violated.  See id. at 149 ("At the heart
of Fuentes is the principle that it is not for law enforcement officers to
decide who is entitled to possession of property.  Rather, it is the domain
of the courts, and citizens are to have a meaningful opportunity to be heard
as to their rights before they are finally deprived of possession of
property.").  Abbott provides further support for the Court's finding that
the law is clearly established.

make clear that the default rule applies to police providing standby assistance during a private repossession.   Accordingly, Defendant Lum is not entitled to qualified immunity because the law is clearly established.

    **C.**    **Fourth Amendment**

        **1.**    **Whether Plaintiff has Sufficiently Stated an Underlying Violation**

The Fourth Amendment provides that persons shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S. Const. amend. IV.   A seizure of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"   Soldal v. Cook Cty., Ill., 506 U.S. 56, 61, 113 S. Ct. 538, 543, 121 L. Ed. 2d 450 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984)).   The Fourth Amendment protects against "not all searches and seizures, but unreasonable searches and seizures."   Terry v. Ohio, 392 U.S. 1, 8 (1968) (quoting Elkins v. United States, 364 U.S. 206, 222 (1960)).   Accordingly, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'"   Kentucky v. King, 563 U.S. 452, 459, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011) (quoting Brigham City, Utah v. Stuart, 547 U.S. 398, 398, 126 S. Ct. 1943, 1944, 164 L. Ed. 2d 650 (2006)).

Plaintiff alleges that Defendant Lum violated her Fourth Amendment rights by participating in the unreasonable seizure of her horse.  Defendant Lum argues that (1) Plaintiff has failed to plead a possessory interest in the horse; (2) that he cannot be held liable since he did not conduct the seizure; and (3) that even if he had seized the horse, the seizure would be lawful because it was reasonable.

### a.   Possessory Interest

Defendant Lum first argues that Plaintiff has failed to plead a possessory interest in the horse.  Mot. at 4.

In her Complaint, Plaintiff asserts that Defendant Wolfram gave Jasper the horse to Plaintiff because Defendant Wolfram "was concerned about the amount of time and care she could devote to 'Jasper' and because she felt Plaintiff would be willing and able to properly care for 'Jasper[']."  Compl. ¶ 12. This allegation on its face provides a possessory interest— Plaintiff asserts that she owned the horse.  Moreover, Plaintiff had been in possession of the horse for some thirty days with Defendant Wolfram's agreement.

Defendant Lum submits the police report that he prepared regarding the encounter, which specifically includes the medical record, lease agreement, and text messages that Defendant Wolfram showed Defendant Lum.  Although the Court here considers a motion to dismiss, it is permitted to "consider

- 22 -

certain materials" including "documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment," United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003), as long as "the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them," Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

Plaintiff's counsel confirmed at the hearing on this motion that Plaintiff does not contest the authenticity of the police report, and Plaintiff's Complaint discusses these documents provided by Defendant Wolfram to Defendant Lum. Plaintiff bases her Fourth Amendment claim on an assertion that she sufficiently asserted an ownership interest in the horse despite Defendant Lum requesting and being provided with this somewhat contradictory evidence.  Compl. ¶ 18 (Defendant Lum told Defendant Wolfram to bring documentation); ¶ 23 ("At the stables, Defendant WOLFRAM met with Defendant LUM, explained her side of the story to him and presented him with a medical record, a lease agreement, and text messages regarding 'Jasper.'"); ¶ 30 (referencing the impartiality section of Defendant Lum's police report).  Accordingly, the Complaint necessarily relies on the documents presented to Defendant Lum, and the Court may consider them.

Consideration of the documents does not undermine Plaintiff's assertion of a possessory interest in the horse. Defendant Lum's police report states that Plaintiff was clear at the time of the incident that the horse belonged to her.  Reply, Ex. A at C000004 ("Hollandsworth was very argumentative and kept saying something to the effect 'the horse belongs to me, I have all the texts.'  Hollandsworth related to me that the horse was 'gifted' to her by Wolfram.").  The written statement Plaintiff provided at the time, attached to the police report, likewise asserts that Plaintiff was given the horse by Defendant Wolfram. Id. at C000025-29.  While Defendant Lum may have found other evidence more credible at the time—and while other evidence may ultimately prove to be more credible when it is presented to this Court—the issue now is whether Plaintiff has plausibly alleged a possessory interest in the horse.[7/]  The Court finds that she has.

### b.  Seizure

Plaintiff asserts that Defendant Lum is liable for the seizure of her horse.  Plaintiff acknowledges that Defendant Wolfram—not Defendant Lum—is the one who physically took the

---

[7/] The Court notes that the medical record relied upon was from July 2017, whereas the unsigned lease agreement is dated October 4, 2017, and the dispute at issue took place later that same month.  If the horse was purportedly "gifted" after the medical visit, the medical record would be of limited use in showing the ownership of the horse on the date in dispute. However, the Court does not weigh the evidence provided in the police report or make any legal determination of ownership on the motion to dismiss.

horse and drove away with it, but asserts that Defendant Lum's provision of standby assistance involved joint action with Defendant Wolfram sufficient to implicate Defendant Lum in the taking.  Opp. at 11.  Defendant Lum argues that Plaintiff has not sufficiently pled joint action.  Mot. at 4-5.

The Court already found that Plaintiff has sufficiently alleged joint action in its Prior Order:

> Plaintiff here alleges that Defendant Wolfram reached out to Defendant Lum and discussed her plan to retrieve the horse prior to Defendant Lum's provision of standby assistance.  At the time the horse was taken, Plaintiff alleges that Defendant Lum intervened, asserted that the horse belonged to Defendant Wolfram, questioned Plaintiff's claim of ownership, and had Plaintiff fill out a police form.  Compl. ¶ 26.  Defendant Lum "displayed his authority" to permit Defendant Wolfram to take and drive away with the horse.  Compl.  ¶ 27.  Plaintiff asserts that because of the police authority, she "capitulated" and did not prevent Jasper the horse from being taken, although she "did not at any time invite, consent to, or otherwise allow or permit any of the Defendants to take 'Jasper' from her."  Compl. ¶¶ 28-29. . . . Taken in the light most favorable to Plaintiff these facts create a plausible claim of joint action.

Prior Order at 17-18 (footnote omitted).  Defendant Lum provides no novel basis on which to disturb the Court's prior holding.  Accordingly, based on the Prior Order, the Court again finds that Plaintiff has sufficiently alleged joint action.

c.   **Reasonableness**

Defendant Lum argues that "even assuming, arguendo, (1) that Plaintiff had a possessory interest in Jasper and (2) that Defendant Lum seized Jasper," the seizure was nevertheless lawful because it was reasonable.  Reply at 2; see also Mot. at 4.  As stated above, the Fourth Amendment only bars unreasonable seizures.

In Russell v. City and County of Honolulu, No. CIV. 13-00475 LEK, 2013 WL 6222714 (D. Haw. Nov. 29, 2013), a court in this district considered instances where HPD officers seized property in a protest encampment pursuant to a city sidewalk-nuisance ordinance.  The court first found that the plaintiffs were likely to be successful in arguing that enforcement of the ordinance violated their procedural due process rights.[8/]  Id. at *15.  The court then turned to the Fourth Amendment claim of unreasonable seizure and held:  "Insofar as the seizure of [the plaintiffs'] property violated their right to procedural due process, this Court also concludes that the seizure was

_____

[8/] The court based that holding on the argument that the ordinance as applied to the plaintiffs violated their procedural due process rights.  The court denied the plaintiffs' motion as it related to the facial challenge of the ordinance.  The ordinance provided post-deprivation hearing procedures, the City provided post-deprivation notices regarding the ability to request a hearing, and the ordinance contained exemptions for persons to recover certain necessities without any fee or hearing.  On those facts, the court found "that pre-removal notices and hearings are not required because the interests at stake are relatively small in comparison to the fiscal and administrative burdens that the City would incur."  Russell v. City & Cty. of Honolulu, No. CIV. 13-00475 LEK, 2013 WL 6222714, at *12 (D. Haw. Nov. 29, 2013).  The court went on to find that the notices in fact given were insufficient.

unreasonable and a violation of their Fourth Amendment rights." Id.; see also Soldal v. Cook Cty., Ill., 506 U.S. 56, 70, 113 S. Ct. 538, 548, 121 L. Ed. 2d 450 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.").

So too, here.  Because Plaintiff has stated a claim that Defendant Lum violated her clearly established right to procedural due process by conducting the seizure, it therefore follows that the seizure was unreasonable.

### 2.   Whether the Right was Clearly Established

The Court considers whether it was clearly established that Defendant Lum's provision of standby assistance during the retrieval of a horse, his assertion that he was in charge of the situation, and his conclusion that Defendant Wolfram should be permitted to leave with the horse, all without any prior notice to Plaintiff or opportunity for her to contest the retrieval, violated Plaintiff's Fourth Amendment rights.

When determining whether the law is clearly established, courts attribute to defendants "knowledge of constitutional developments at the time of the alleged constitutional violation, including all available case law." Fed. Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 477 (9th Cir. 1991) (internal quotation marks and citation omitted). Relevant here, the Supreme Court has held that police officers

who provide standby assistance during a private repossession and substantially intervene in that private repossession may be liable for violating an individual's Fourth Amendment right to be free from unreasonable seizures.  <u>Soldal v. Cook County, Illinois</u>, 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992).

In <u>Soldal</u>, the Supreme Court expressly rejected the contention that the stated violation "was more akin" to a due process challenge than a Fourth Amendment challenge.  <u>Id.</u> at 69-70.  It explained that there is "no basis for doling out constitutional protections in such fashion" because where "wrongs affect more than a single right" those wrongs "can implicate more than one of the Constitution's commands."  <u>Id.</u> at 70.  Thus, under <u>Soldal</u>, it was clearly established that police officers improperly assisting an individual in a property dispute can simultaneously offend Fourth and Fourteenth Amendment protections.

Defendant Lum argues that <u>Soldal</u> is distinguishable because the police officers in that case knew that the eviction was illegal.  Reply at 3.  Defendant Lum argues that he—in contrast—had "objectively reasonable grounds" to assist Defendant Wolfram in recovering her horse such that "even if a seizure occurred" here, it was not a violation of a clearly established right.  <u>Id.</u>

The Court disagrees.  First, as the Court has already explained, conducting a seizure without providing an individual her clearly established right to procedural due process makes the seizure unreasonable.  Russell, 2013 WL 6222714, at *15. Because inadequate procedural due process was provided, it is irrelevant that Defendant Lum may have believed—reasonably or otherwise—that Defendant Wolfram was the true owner of the horse. Defendant Lum's role here was to prevent a breach of the peace, not to determine who the true legal owner of the horse was.

Second, although the Soldal Court stated in its review of the facts that those police officers knew the eviction was illegal under state law, the Court did not base its ultimate holding on that fact.  Rather, the Court explained that the police officers "acting under color of state law, dispossessed the Soldals of their trailer home by physically tearing it from its foundation and towing it to another lot." Soldal, 506 U.S. at 72.  Likewise, Plaintiff here alleges that Defendant Lum, acting under color of state law, dispossessed her of her horse by intervening in a private dispute, announcing that he was in charge, and stating that he had determined Defendant Wolfram would be permitted to take the horse and leave.

The Court finds that it was clearly established that a police officer could not legally use his authority as a police

officer to deprive an individual of her property without the provision of due process.  Plaintiff adequately alleges that Defendant Lum violated this clearly established right, and Defendant Lum is thus not entitled to qualified immunity.

## II.  State Law Claims

In addition to the constitutional claims, Plaintiff brings state law claims against Defendant Lum for intentional infliction of emotional distress and negligence.

### A.    State Law Conditional Privilege

Under Hawaii law, "non-judicial governmental officials, when acting in the performance of their public duty, enjoy the protection of what has been termed a qualified or conditional privilege." Towse v. State, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982) (footnotes omitted).  An officer is entitled to that privilege unless the plaintiff can show "that the official had been motivated by malice and not by an otherwise proper purpose." Id. at 632.

The Court held in its Prior Order that Plaintiff has failed to allege that Defendant Lum acted with malice.  Prior Order at 34-36.  Accordingly, he is entitled to the conditional privilege against the state law claims.  The intentional infliction of emotional distress and negligence claims are subject to dismissal on this basis alone.

**B.    Intentional Infliction of Emotional Distress**

Plaintiff's claim for intentional infliction of emotional distress is also subject to dismissal for the additional reasons that Plaintiff has waived any opposition, and Defendant Lum's conduct was not alleged to be outrageous.

By failing to raise argument in opposition to Defendant Lum's motion to dismiss her intentional infliction of emotional distress claim, Plaintiff has waived her argument for purposes of opposing the instant motion.  Yonemoto v. McDonald, No. CIV. 11-00533 JMS, 2015 WL 1863033, at *7 (D. Haw. Apr. 22, 2015); see also Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment." (internal quotation marks and citations omitted; alterations in original)).

Defendant Lum also correctly argues that his conduct here was not sufficiently "outrageous" to amount to intentional infliction of emotional distress.  A plaintiff asserting a claim for intentional infliction of emotional distress must establish "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress" to her.  Hac v. Univ. of Hawai'i, 102 Haw. 92, 106–07, 73 P.3d 46, 60–61 (2003).

"The term 'outrageous' has been construed to mean 'without just cause or excuse and beyond all bounds of decency.'" Enoka v. AIG Hawaii Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Lee v. Aiu, 936 P.2d 655, 670 n. 12 (Haw. 1997)).  Defendant Lum's conduct here—where he was directed to the scene by his employer, did not intervene until escalating verbal arguments ensued, reviewed evidence that could reasonably validate Defendant Wolfram's claim of ownership, and nevertheless ensured Plaintiff was able to document her claim of ownership—does not rise to that level.

Accordingly, Plaintiff has failed to state a claim for intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant Lum's Motion to Dismiss, ECF No. 21.  Plaintiff's Fourth and Fourteenth Amendment claims against Defendant Lum survive, while the state-law claims are DISMISSED. Because Plaintiff may be able to cure some of the pleading defects via amendment, leave to amend is granted and the claims against Defendant Lum are dismissed without prejudice.  Any amended complaint must be filed within thirty days of the issuance of this Order and should comply with the guidance and standards set forth herein.  Failure to file an amended

complaint within thirty days may result in this action being dismissed with prejudice.  The Court emphasizes that it has not granted Plaintiff leave to make other changes, such as adding new parties or entirely new claims.  The Court specifically bars Plaintiff from adding or altering the allegations asserted against the City since the Court provided Plaintiff the opportunity to amend those claims after its Prior Order was issued, and Plaintiff chose not to do so.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, September 25, 2020.



Alan C. Kay
Sr. United States District Judge

Hollandsworth v. City and County of Honolulu, et al., Civ. No. 19-00587 ACK-WRP, Order Granting in Part and Denying in Part Defendant Lum's Motion to Dismiss.